AFFIDAVIT IN SUPPORT OF FORFEITURE COMPLAINT

I, Steven N Presley, having been duly sworn, dispose and state:

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Affiant has been employed by the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since 2019. Affiant is currently assigned to the Louisville District Office (LDO). In connection with my official DEA duties, I investigate criminal violations of state and federal narcotics laws, including, but not limited to violations of Title 21, United States Code, Sections 841, 843, 846 and 848. Affiant has received specialized training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Affiant has testified in judicial proceedings and prosecutions for violations of controlled substance laws. Affiant also has been involved in various types of wire surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking.

3. Affiant has received training in investigations and has participated in investigations involving the interception of wire communication devices. Affiant is familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions. Affiant is familiar with, and has participated in all the normal methods of investigations, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers and undercover operations. Through my training and experience as a Task Force Officer, and through contacts with other agencies, I know:

    A. That it is common for the drug traffickers to transport illegal narcotics and drug proceeds from the sale of illegal narcotics in passenger vehicle(s). Often the drugs and drug proceeds are concealed in vehicle(s) to avoid detection by law enforcement.

    B. That during an encounter with law enforcement, with a drug detection dog is present on scene, the K-9 will alert to the U.S. Currency if the odor of illegal narcotics is present.

    C. That persons involved in the sale of illegal narcotics will have the U.S. Currency banded into stacks of $1,000, $2,000, $5,000, or $10,000 increments in various denominations.

4. As set forth more fully below, based upon information provided to me and/or firsthand knowledge, Affiant states there is reasonable and probable grounds to believe that money seized from the vehicle operated by Mario Rutilio CARPIO DIAZ constitutes proceeds traceable to narcotics trafficking, facilitated narcotics trafficking and/or intended for narcotics trafficking. This affidavit does not include all information known to me or other investigators.

**Facts of the Case**

5. On November 19th, 2025, members of the Louisville Division Office (LDO) and the Jeffersontown Police Department (JPD) received information from a reliable confidential source that an unidentified male would be traveling to the Frisch's Big Boy restaurant located at 1710 Lincoln Avenue Louisville, Kentucky 40213 in a red passenger vehicle at 3:30p.m. with approximately $36,000 dollars in U.S. Currency for the purpose of purchasing 2 kilograms of cocaine.

6. Based off the information received, at approximately 2:45pm law enforcement established surveillance of the parking lot in anticipation of the suspected narcotic trafficker(s) arrival. After a period of time, a red passenger vehicle arrived at the business parking lot matching the description of the suspect vehicle in question. During the suspect's arrival, law enforcement received additional information from the listed reliable confidential informant that the unidentified male operating the red car was on the parking lot with the U.S. Currency. After a few minutes, the suspect left the parking lot operating the red passenger car and law enforcement continued surveillance.

7. As a result of this information and surveillance by law enforcement, the vehicle was stopped at the direction of the DEA by KSP Trooper Ethan Whitlock, who pulled the suspect over after he observed him follow a vehicle too closely. Trooper Whitlock also ran the plates and it showed that he had no driver's license. During the traffic stop on I-264 east at Newburg Road, KSP Trooper Whitlock identified the driver and only occupant of the vehicle as Mario Rutilio CARPIO DIAZ, date of birth 06/04/1982. Trooper Whitlock obtained verbal consent captured on trooper's body cam, to search the suspect's vehicle and recovered 2 plastic bags containing a large sum of U.S. Currency, Exhibit N-1. The U.S. Currency had been concealed in a plastic bag and placed in the back trunk area of the vehicle. Trooper Whitlock then deployed his K9 partner (who is a certified and reliable K9) inside the vehicle where his K9 alerted to the odor of narcotics coming from the U.S. Currency.

8. CARPIO DIAZ stated to agents that he works for himself doing landscaping. He stated that someone “set him up”. At first, he also stated that no money, weapons or drugs were in the vehicle prior to consenting to the search. After Trooper Whitlock located the two bags containing a large amount of U.S. Currency, Trooper Whitlock asked CARPIO DIAZ how much money was in the bags. CARPIO DIAZ initially stated he did not know how much, and then stated that there was $40,000. He then claimed the money was for buying tools and that the money was his. CARPIO DIAZ was extremely nervous during the stop while talking to law enforcement. The money was rubber banded in 40-$1,000 increments which is common in the narcotic trade.

9. Based on the information received by the reliable confidential source, CARPIO DIAZ statements, and Trooper Whitlock K-9 partner alerting to the odor of narcotics coming from the U.S. Currency, the U.S currency was seized. On 11/20/2025, SA Tyler Dear, as witnessed by TFO Presley, transported the seized currency to Loomis and the official count was determined to be $40,000.00 U.S. Currency.

10. Additionally, a further check of Mario Rutilio CARPIO DIAZ immigration status, CARPIO DIAZ is not a citizen of the United States and had been issued a “final order for removal” from the United States and had been listed as a fugitive since 2008 regarding his immigration status.

11. On February 5th, 2026, a claim was submitted on behalf of CARPIO DIAZ by his attorney and several documents were attached to the claim. CARPIO DIAZ swore that the claim was true under penalty of perjury. TFO Presley reviewed the claim and documents he provided. In his claim, CARPIO DIAZ acknowledged that he was “not a citizen of the United States” and that he gave consent to the search.

12. His claim stated that he was going to buy tools and supplies for his business, Diaz Painting and More. He stated that he also worked for a granite company for past two years. He further stated that he reported income of $168,600 in self-employment on his 2024 tax returns.

13. CARPIO DIAZ provided articles of organization filed with the State of Kentucky of an LLC business named “Diaz Painting and More.” The articles of organization were filed on November 20th, 2025, which is the day *after* the seizure occurred. During the traffic

stop, CARPIO DIAZ stated he was a landscaper and he stated that the money was from landscaping and he was going to "buy tools". CARPIO DIAZ also stated that he was "set up" which is common when drug traffickers are stopped by law enforcement.

14. The records CARPIO DIAZ attached to his claim do not explain his possession and acquisition of $40,000 in cash. The tax return records for 2024 that he attached to his claim show that CARPIO DIAZ reported $10,400 in "gross sales" from being a landscaper (not the $168,600 in self-employment income he claimed to have reported in his claim). He reported having $4,760 in expenses, with a total profit of $5,640 for 2024, and total of $797 in federal income taxes owed. Likewise, the personal bank records that CARPIO DIAZ attached do not explain how he acquired $40,000 in cash, nor does it show that the $40,000 in cash was withdrawn from his personal bank accounts.

## Conclusion

There is probable cause to believe that the defendant property listed above and in the Complaint is subject to forfeiture to the United States, as proceeds directly and indirectly traceable to drug trafficking (both facilitating and proceeds thereof) and furthermore, there is probable cause to believe that the defendant property was intended to be furnished in exchange for controlled substances, all in violation of 21 U.S.C. §§ 841 and 846. Consequently, the property is subject to forfeiture under 21 U.S.C. § 881(a)(6).

AFFIANT FURTHER SAYETH NOT

STEVEN PRESLEY (Affiliate)
Digitally signed by STEVEN PRESLEY (Affiliate)
Date: 2026.11.05 15:26:14 -05'00'

Task Force Office Steven N. Presley
Drug Enforcement Administration